IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DIANA SCHAEFER,

                                     Plaintiff,                                   OPINION & ORDER

     v.

                                                                13-cv-713-jdp

BANK MUTUAL,

                                     Defendant.

---

Plaintiff Diana Schaefer has sued defendant Bank Mutual for terminating her employment after 10 years, including eight years as a bank office manager. Schaefer was 56 years old at termination, and she alleges that Bank Mutual unlawfully discriminated against her on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Bank Mutual maintains that it terminated Schaefer because she submitted two inaccurate time records in violation of bank policies.

Schaefer was a highly regarded bank office manager until 2011, when she got a new manager, Tom Kendall. Kendall soon wanted to fire Schaefer, but bank management would not go along. When Kendall found out from another employee that Schaefer had submitted an inaccurate timesheet, he tipped off the director of human resources. Timesheets were required for all employees, even though for salaried employees like Schaefer, the timesheets did not affect their compensation. Schaefer had entered time for one day that she had not worked, and she had failed to enter time for another day when she had. The director of human resources fired Schaefer, and Kendall replaced her with a 36-year-old woman who lacked management experience. Schaefer admits the two inaccurate time records, but she contends that the inaccuracies were honest mistakes, undeserving of termination. She claims that Bank Mutual

used the time records as a pretext for unlawful discrimination, so that Kendall could replace her with the younger co-worker whom he favored.

Before the court is Bank Mutual's motion for summary judgment. Dkt. 19. The court will deny Bank Mutual's motion because Schaefer has adduced sufficient evidence to support a reasonable jury verdict that Bank Mutual's purported reason for firing her was a pretext, and that Schaefer's age was the but-for cause of her termination. Bank Mutual is therefore not entitled to summary judgment.

UNDISPUTED FACTS

The court finds that the following facts are material and undisputed.[1]

Schaefer began working for Bank Mutual on April 1, 2002, as a personal banker. She was 46 years old at the time she was hired. On December 26, 2004, when she was 48 years old, Bank Mutual promoted Schaefer to bank office manager of the branch in Janesville, Wisconsin. As bank office manager, Schaefer was a salaried, or exempt, employee.

On April 1, 2011, Tom Kendall began working for Bank Mutual as the bank office district manager and began directly supervising Schaefer and five other bank managers. Shortly

---

[1] Many of Schaefer's proposed findings of fact rely on inadmissible evidence. Specifically, the affidavit of Schaefer's attorney attesting to the authenticity of certain exhibits, Dkt. 35, is largely ineffective because he lacks personal knowledge of the exhibits sufficient to authenticate them. Fed. R. Civ. P. 56(c)(4); *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660 (7th Cir. 1994) (affirming a district court's rejection of a party's attorney's affidavit attempting to authenticate evidence of which he had no personal knowledge). The attorney could have had Schaefer herself authenticate two of the exhibits as her own personal calendars from 2011 and 2012. Dkt. 35-9 and Dkt. 35-10. With proper foundation, the calendars could fall under the recorded recollection exception to the rule against hearsay. Fed. R. Evid. 803(5). However, they are currently unauthenticated and will not be considered in deciding this motion. Another exhibit appears to be a letter written by Schaefer to the EEOC. Dkt. 35-15. Just like the calendars, Schaefer could have authenticated the letter, but both because it constitutes inadmissible hearsay and because it is not currently authenticated, the court will not consider it in deciding this motion. Fed. R. Civ. P. 56(e).

after Kendall became her manager, Schaefer began to perceive Kendall's dislike and specific targeting of her. For example, Schaefer describes Kendall as being particularly critical of her work performance, though not of her subordinates' work performance. Schaefer also noticed that Kendall took particular favorable interest in one significantly younger employee: Russann McManus. From time to time in 2011 and 2012, Kendall voiced complaints about Schaefer, but none of the complaints resulted in formal discipline against Schaefer. Nor does Bank Mutual cite these complaints as reasons for Schaefer's eventual termination.

On October 1, 2012, Kendall emailed his own superior and suggested that Bank Mutual terminate Schaefer's employment as branch manager and replace her with either McManus or the Beloit branch manager, Jacen Heideman. Kendall contended that he wanted to fire Schaefer based on her production and her resistance to change. After his effort to have Schaefer fired did not succeed, on October 26, 2012, Kendall called the human resources director, Diane Southworth, to report that there was a discrepancy in Schaefer's time records. Southworth began an inquiry that day, specifically investigating Schaefer's time records for October 19, 2012.

The relevant Bank Mutual policies are 2.02 Disciplinary Action, 4.01 Attendance Policy, and 4.03 Time Records. Dkt. 21-3. The Disciplinary Action policy establishes the objectives of the bank policies, and it describes a flexible progressive discipline process that typically begins with discussion with the employee and, if necessary, moves to formal discipline. Although progressive discipline is typical, the Disciplinary Action policy also provides that: "Discipline may begin at any step, including termination, depending of the seriousness of the matter or the violation committed and the surrounding circumstances." The Disciplinary Action policy provides a non-exclusive list of 19 example behaviors that "may result in disciplinary action," including such behaviors as "violation of federal securities laws," "dishonesty," and

"unacceptable dress or appearance." Most pertinent to this case, among the listed behaviors is "falsification of time records." The Attendance Policy provides that attendance and tardiness problems will be subject to progressive discipline. It requires the keeping of certain time records, particularly for hourly employees. But it also provides that: "Salaried (exempt) associates are also requested to reflect actual time worked on their timesheets." The Time Records policy provides that: "For attendance record purposes, exempt associates are required to provide a timesheet which records their start and end times each workday." Further, it provides that: "It is each associate's responsibility to provide a full and honest accounting of their work time on their timesheet. Falsification of time records is a serious offense which may result in disciplinary action, up to and including termination of employment." Dkt. 21-5, at 6. In addition to the formal policies, Bank Mutual reminded its employees, via email, that it took time records very seriously and that violations of the related policies could result in severe disciplinary action.

Southworth's investigation showed that the branch schedule indicated that Schaefer was not scheduled to work on October 19, 2012, but that her timesheet indicated that she had worked from 8:30 a.m. until 1:30 p.m. Despite the timesheet, Schaefer's computer usage information indicated that Schaefer did not use her work computer for any purpose that day. On November 15, 2012, Southworth, Kendall, and Schaefer met to discuss the discrepancy. At that meeting, Schaefer told Southworth and Kendall that she had not worked on October 19, 2012, and had instead taken a floating holiday. She stated that she must have recorded the time in error. Schaefer had more than enough accrued holiday and vacation time to cover the time that she did not work, but claimed on her timesheet.

Following the November 15, 2012, meeting, Southworth decided to investigate Schaefer's time records for the week of October 27, 2012. According to the branch schedule and Schaefer's computer usage information, she worked from approximately 8:00 a.m. until just

after 12:00 p.m. that day, but her time records did not reflect any hours worked. Southworth stated in her declaration that, as a result of her investigation, she concluded that Schaefer misrepresented her work hours on her time records on at least two separate occasions in violation of Bank Mutual's attendance, time records, and disciplinary action policies.

On November 19, 2012, Southworth called Schaefer and told her that Bank Mutual was terminating her employment, effective November 16, 2012. Southworth sent Schaefer a termination letter on the same day. At the time, Schaefer was 56 years old. After reshuffling employees as a result of the Beloit branch office closing, Bank Mutual eventually replaced Schaefer with McManus, who was 36 years old and had no experience as a manager. McManus was selected over Heideman, who had been with Bank Mutual for 28 years and worked as the Beloit branch manager.

Bank Mutual has fired three other managers for falsifying their time records since 2007. L.S. was a bank office manager who was terminated at the age of 52 for falsifying her time record twice. K.N. also worked as a bank office manager and was terminated at the age of 49. She was terminated not only for falsifying records on several occasions, but also for dishonesty, which is a separate ground for termination under the Disciplinary Action policy. Lastly, N.W. was a bank office manager who was terminated at the age of 39. N.W. falsified her time record on at least three occasions and allowed two other employees to also falsify their time records.

ANALYSIS

A.  Standard of Review

Summary judgment is appropriate if Bank Mutual "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court considers the facts in the summary judgment record in the light most

favorable to Schaefer and draws all reasonable inferences in her favor. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999). However, "[a] genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Thus, to survive summary judgment, Schaefer must go beyond her pleadings and identify specific material facts showing genuine issues for trial to "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [her] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996) (internal citations omitted).

## B.  Proving Age Discrimination

The Age Discrimination in Employment Act (ADEA) prohibits workplace discrimination based on age. 29 U.S.C. §§ 623(a)(1), 631(a). To prevail on her ADEA claim, Schaefer must show by a preponderance of the evidence that she suffered an adverse employment action because of her age. To prove her case, Schaefer may elect to use either the direct method or the indirect method of presenting evidence that age was the "but-for" cause of the firing decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009) ("[P]laintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) (outlining the indirect, burden-shifting method); *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 641 (7th Cir. 2008) (stating that plaintiff "must show that her age actually motivated" the termination) (internal citations omitted). Under both approaches, "the bottom-line question is whether the plaintiff has proved intentional discrimination." *Martino v. MCI Commc'n Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009) (internal citations omitted). Schaefer has elected to use the indirect method. *See* Dkt. 32, at 2.

Under the indirect method framework, Schaefer must make a prima facie case of age discrimination by demonstrating that: (1) she is a member of the protected class; (2) her performance met the legitimate expectations of Bank Mutual at the time of the adverse action; (3) despite her performance, she suffered an adverse employment action; and (4) Bank Mutual treated other, similarly situated employees outside of the protected class better than it treated Schaefer.[2] *Martino*, 574 F.3d at 453. If Schaefer makes this prima facie case, the burden of production shifts to Bank Mutual to show a legitimate, non-discriminatory reason for the adverse action. If Bank Mutual produces such a reason, then the burden shifts back to Schaefer to demonstrate that Bank Mutual's proffered reason is merely a pretext for age discrimination. A reason may be considered pretextual if it: (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to motivate the termination. *Davis v. Wis. Dept. of Corr.*, 445 F.3d 971, 977 (7th Cir. 2006). If Schaefer raises a genuine issue of material fact, from which a reasonable jury could conclude that Bank Mutual's proffered reason was a pretext and that age discrimination was the true motive, then summary judgment will not be appropriate. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) (holding that the plaintiff's prima facie case combined with demonstrated falsity of the employer's proffered reason may be enough to sustain a reasonable verdict, but that there may be instances in which the plaintiff will need additional affirmative evidence of discrimination).

---

[2] Schaefer argues that she was meeting Bank Mutual's legitimate expectations, and she thus enjoys a relaxed standard to prove the fourth element, requiring only evidence that Bank Mutual hired a substantially younger employee to replace her. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600-01 (7th Cir. 2010); *Zilisch v. R.J. Reynolds Tobacco Co.*, No. 10-cv-474, 2011 WL 7630628, at *10 (W.D. Wis. June 21, 2011).

## C.  Schaefer's Prima Facie Case

The parties agree on steps one and three of Schaefer's prima facie case: Schaefer is in the protected class because she was older than 40 at the time of her termination and she suffered an adverse employment action by being fired. As for step two of her prima facie case, Schaefer argues that she was meeting Bank Mutual's *legitimate* expectations at the time she was fired. Bank Mutual contends that she was not meeting expectations because she violated three of its policies. Schaefer responds that the alleged policy violations were a pretext for Bank Mutual's discrimination against her and therefore the violations do not demonstrate that she failed to meet the bank's legitimate expectations. These questions are deeply intertwined: resolving step two of the prima facie case requires the court to resolve the question of whether Bank Mutual's purported reason is pretextual. *See, e.g., Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("[T]he second prong and the pretext question seemingly merge because the issue is the same—whether the employer is lying.").[3]

Demonstrated policy violations might show that an employee failed to meet the legitimate expectations of the employer, but that conclusion does not follow in this case. Schaefer argues that she did not violate Bank Mutual's policies because she made an honest mistake. But the Attendance Policy and the Time Records policy require all employees to record floating holidays and to accurately record time in the office; these policies do not excuse honest mistakes. Thus, Schaefer violated the policies. But the real question is whether, despite those technical violations, Schaefer was meeting the bank's legitimate expectations. Bank Mutual contends that she was not, because the violations were serious enough to warrant termination.

---

[3] This case provides another example of the confusion and redundancy caused by the traditional burden-shifting framework. *See, e.g., Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J. concurring) (advocating for abandoning of the burden-shifting framework in favor of a flexible, common-sense approach).

To be clear, this court's task here is not to determine whether the bank's policies are wise, or whether bank management wisely or fairly applied them. The question is whether Schaefer was meeting the bank's legitimate expectations, despite the bank's decision to fire her.

In this context, one pertinent question is whether Schaefer's termination was warranted under the Bank's Disciplinary Action policy. That policy permits immediate termination, "*depending on the seriousness of the matter or the violation committed*." "Falsification of time records" is one of the exemplary violations in the Disciplinary Action policy, and it is highlighted in the Time Records policy as an offense that "may" lead to discipline. But nothing in the Bank's policies—fairly read—suggests that two *honest* timekeeping errors that did not affect the employee's compensation would prompt immediate termination. Schaefer is correct that she did not "falsify" her time records; her errors violated bank policies but not in a way that would warrant termination under those policies.

There is another important fact to consider here: bank management declined to terminate Schaefer even on Kendall's recommendation on October 1, 2012. Thus, as of October 1, 2012, bank management believed that Schaefer was meeting the bank's expectations, despite Kendall's unfavorable opinion of her. The expectation of perfection is not legitimate. Thus, despite the two honest timekeeping errors, the record evidence shows that Schaefer was meeting the bank's legitimate expectations.

Because Schaefer can show that she was meeting Bank Mutual's legitimate expectations, she is entitled to the benefit of a more relaxed showing at step four in her prima facie case: she need only show that she was replaced by a substantially younger employee. *Naik*, 627 F.3d at 600-01; *Zilisch*, 2011 WL 7630628 at *10. Because McManus, a 36-year-old employee, eventually filled Schaefer's position as Branch Office Manager, the court concludes that the last

step in Schafer's prima facie case is also satisfied. By establishing her prima facie case, Schaefer has created the rebuttable presumption that Bank Mutual unlawfully discriminated against her.

## D.  Bank Mutual's Nondiscriminatory Reason for Terminating Schaefer

To rebut the presumption created by Schaefer's prima facie case, Bank Mutual argues that it terminated Schaefer because she twice violated bank policies by submitting inaccurate time records. Violating company policies can be a legitimate, nondiscriminatory reason for an adverse employment action. *Naik*, 627 F.3d at 601 (finding that policy violations sufficed as a legitimate, nondiscriminatory reason for terminating employment); *Zilisch*, 2011 WL 7630628, at *10-11 (same). Bank Mutual's proffered reason for termination is non-discriminatory on its face; the court has some misgivings about whether it was legitimate. Nevertheless, for purposes of this step in the burden-shifting framework, the court will consider Bank Mutual to have shifted the burden back to Schaefer to show that the proffered reason is a pretext.

## E.   Schaefer's Allegation of Pretext

Schaefer must prove that Bank Mutual's proffered reason is not sincere, but rather a pretext for age discrimination. Schaefer alleges that her inaccurate time records are a pretext for her termination. She contends that such a severe enforcement of the policy evidences that the real reason she was fired was unlawful discrimination. To successfully show that Bank Mutual's proffered reason is pretextual, Schaefer must show that it was a lie and not merely a harsh or unfair decision. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006) ("[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason *was* his reason: not a good reason, but the true reason."); *Ineichen v. Ameritech*, 410 F.3d

10

956, 961 (7th Cir. 2005) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie.") (quotations and citations omitted).

To demonstrate pretext, Schaefer must show that the purported reason: (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to motivate the termination. *Davis*, 445 F.3d at 977. Schaefer first argues that Bank Mutual's purported reason—violating the policies—had no basis in fact. As discussed above, the record demonstrates that Schaefer submitted two separate time records with inaccurate entries in October 2012. Schaefer concedes the point. Dkt. 42, ¶¶ 225, 229; Dkt. 45, ¶¶ 98, 109, 110. Schaefer's inaccurate time records violated Bank Mutual's Attendance and Time Records policies, and to that extent, the proffered reason for her termination is based in fact.

Schaefer also alleges that her time-keeping errors were not the actual motivation for her termination because her supervisor, Kendall, harbored a motivation to replace Schaefer with McManus, who was significantly younger than Schaefer. Under Schaefer's theory, Kendall convinced Southworth to fire her, using Southworth as a cat's paw.[4] After initially failing to convince his superiors that Schaefer should be terminated as part of the restructuring of branch offices, Kendall alerted Southworth to Schaefer's time record inaccuracies. Southworth then conducted her own investigation into the inaccuracies, collecting additional evidence and interviewing Schaefer. *Martino*, 574 F.3d at 452-53 ("The company can defeat this tack—what we call the cat's paw theory—by showing that, even if [a coworker] was biased and attempted to

---

[4] The cat's paw analogy comes from a fable in which a monkey convinces a cat to reach into the fire and retrieve chestnuts for them to share. In so doing, the cat burns his paw in the fire, and the monkey gets to enjoy the chestnuts free from injury. In discrimination law, it describes a strategy wherein one person uses and hides behind another, unbiased person to achieve and conceal his discriminatory purpose.

11

get [the employee] terminated for this reason, the decisionmaker did an independent analysis and came to his own conclusion."). Kendall participated in gathering the evidence against Schaefer and conducting the interview with her.

As a result of the investigation, Southworth confirmed that Schaefer had submitted two inaccurate time records and fired Schaefer. Although it was Southworth, and not Kendall, who made the decision to fire Schaefer, it seems unlikely that she would have conducted the investigation that led her to that decision absent Kendall's suggestion. *Hicks v. Forest Pres. Dist. of Cook Cnty., Ill.*, 677 F.3d 781, 790 (7th Cir. 2012) (imputing one employee's animus against the plaintiff to the officials responsible for demoting him because they were dependent on that employee to supply the information on which to base their decision). Southworth therefore depended on Kendall for the basis of her decision and acted as his cat's paw. After Schaefer was fired and the Beloit branch was closed, Kendall continued to advocate that McManus fill Schaefer's manager position, which she eventually did. She was selected even over Heideman, who was 56 years old and, as the branch office manager in Beloit, had far more experience than McManus. Heideman was transferred to the Janesville branch, but demoted to senior licensed banker.

Finally, Bank Mutual's proffered reason does not appear to have been a sufficient basis for terminating Schaefer. As explained above, Schaefer did violate the Attendance Policy and Time Records policy with an honest time-keeping mistake. Although Bank Mutual's Disciplinary Action policy provides that discipline may begin at any step, including termination, the Disciplinary Action policy contemplates less severe discipline for policy infractions of modest severity. The extraordinarily harsh enforcement against Schaefer is suspicious. The court's role is not to judge Bank Mutual's wisdom or fairness in firing Schaefer, but the severity

12

of the policy enforcement against her suggests that her policy violations are not the true reason for her termination.

Bank Mutual contends that it is consistently very strict about enforcing its time-keeping policies, but the record evidence does not support Bank Mutual's argument. Although Bank Mutual cites several other terminations for violations of the Attendance and Time Records policies, each of those terminations involved some element of falsification or dishonesty, in which employees secured time off to which they were not entitled. The record also reflects one important incident in which Bank Mutual did not terminate an employee for such a violation. McManus was caught taking an extra vacation day one year, and instead of being fired, Bank Mutual deducted one vacation day from her the next year. The inconsistency of enforcing the policies undermines Bank Mutual's argument that it is rigid, but evenhanded. This inconsistency casts doubt on the sufficiency of Bank Mutual's legitimate nondiscriminatory reason as a credible basis for firing Schaefer. A jury could conclude that Bank Mutual wanted to fire Schaefer and that it used the attendance and time records policy violations as a pretext to conceal its true motives.

CONCLUSION

Ultimately, Schaefer must provide enough evidence for a reasonable jury to conclude that Bank Mutual's actual motivation was age discrimination. The facts that show the falsity of Bank Mutual's proffered reason might be enough to convince the jury that the true reason was discrimination. *Reeves*, 530 U.S. at 147 ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation"); *see also St. Mary's Honor Center*, 509 U.S. 502, 511 (1993).

13

Schaefer has made out a plausible argument that Bank Mutual, and specifically Kendall, targeted her for termination because of her age, and used her inaccurate time records as a pretext for her termination. Kendall's apparent motivation was to replace her with McManus, who was significantly younger than Schaefer.[5] Alternatively, it could be that Bank Mutual's motivation to fire Schaefer had nothing to do with her age. The pretextual policy violations could have been a cover for another, lawful motivation to fire her. The ADEA prohibits Bank Mutual from firing Schaefer because of her age; it does not prohibit that action for any other reason.

It is not the court's role at this point to determine which motivation Bank Mutual more likely harbored. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (at summary judgment, a court may not weigh the evidence). Schaefer has successfully adduced evidence to show that Bank Mutual's proffered reason was a pretext for something. It will be left to the jury to determine exactly what that something was. Taking the facts and reasonable inferences in Schaefer's favor, a reasonable jury could conclude that it was age discrimination.

---

[5] Although Southworth was the person who hired Schaefer in 2002, Bank Mutual is not entitled to the "same actor inference," which provides that where the same person hired and fired a plaintiff within a relatively short time span, there is a strong inference against discrimination. *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001) (stating that the Seventh Circuit "emphatically rejected" the inference in both the race-discrimination and age-discrimination contexts). Similarly, the fact that all of the individuals who engaged in the investigation and eventual termination were in the protected class and older than Schaefer is "relatively unimportant." *Id.*

ORDER

IT IS ORDERED that:

1)  Bank Mutual's motion for summary judgment, Dkt. 19, is DENIED.

Entered this 29th day of August, 2014.

BY THE COURT:

/s/
JAMES D. PETERSON
District Judge